UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KAREN LOWY et al.,

> *Plaintiffs*,

> v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS, AND EXPLOSIVES et al.,

> *Defendants*.

Civil Action No. 22-3529 (JMC)

## REPLY IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

ARGUMENT ...................................................................................................................... 1

I.    Defendants' Alleged Failure to Seek Clarification of Plaintiffs' Request Does Not
      Excuse Plaintiffs From Meeting An Essential Element of Their Claim ........................... 1

      A.    A Plaintiff Cannot Invoke a Mere Regulation to Evade a Statutory Command ..... 2

      B.    28 C.F.R. §16.3(b) Does Not Require a Court to Maintain a FOIA Suit Even
            When a Plaintiff Has Not Reasonably Described the Records Sought ................... 3

      C.    The Cases Plaintiffs Cite Do Not Compel a Different Result ............................... 8

II.   Plaintiffs Failed to Reasonably Describe the Records Sought.......................................... 9

      A.    Plaintiffs' Arguments as to Why Their Request is Sufficient Are Unpersuasive . 13

      B.    The Cases Plaintiffs Cite to Defend Their Request's Adequacy Are Inapposite . 16

CONCLUSION ................................................................................................................. 20

Defendants Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and the Department of Justice, by and through the undersigned counsel, respectfully reply in support of their motion to dismiss Plaintiffs Karen Lowy and Daniel Jaffe's complaint, ECF No. 1, for failure to state a claim upon which relief can be granted.

## ARGUMENT

In moving to dismiss, Defendants explained that Plaintiffs failed to state a claim upon which relief could be granted because their records request under the Freedom of Information Act ("FOIA") did not "reasonably describes such records." 5 U.S.C. § 552(a)(3)(A). In their response, Plaintiffs advance two arguments: that (1) Defendants' alleged failure to seek clarification of their request, pursuant to a departmental regulation, now precludes this Court from dismissing their complaint for failure to meet an essential element of their claim, and (2) their request did, in fact, reasonably describe the records sought. As explained further below, neither of these contentions has merit. A plaintiff cannot rely on a regulation to override the statutory requirement that a FOIA request must reasonably describe the records sought, and, regardless, the regulation at issue does not excuse Plaintiffs from failing to meet this requirement. And Plaintiffs' FOIA request does not reasonably describe the records sought. The cases Plaintiffs cite for contrary positions, meanwhile, are inapposite.  As such, this Court should dismiss Plaintiffs' complaint with prejudice.

**I.    Defendants' Alleged Failure to Seek Clarification of Plaintiffs' Request Does Not Excuse Plaintiffs From Meeting An Essential Element of Their Claim**

A Department of Justice regulation requires all FOIA requesters to "describe the records sought in sufficient detail to enable Department personnel to locate them with a reasonable amount of effort." 28 C.F.R. § 16.3(b). This requirement mirrors FOIA's textual command that a request is defective unless it "reasonably describes [the] records" it seeks. 5 U.S.C. § 552(a)(3)(A). The regulation also provides, however, that "[i]f after receiving a request a component determines that

it does not reasonably describe the records sought, the component shall inform the requester what additional information is needed or why the request is otherwise insufficient." 28 C.F.R. § 16.3(b).

Relying on this language, Plaintiffs argue that because Defendants allegedly did not request clarification of their request at the agency, this Court cannot now dismiss their complaint for failure to state a claim upon which relief can be granted. This argument fails for two reasons: (1) a plaintiff cannot rely on a regulation to evade a statutory requirement, and (2) the regulation at issue does not, even on its own terms, require a court to maintain a FOIA suit where the plaintiff has failed to reasonably describe the records sought.

### A.    A Plaintiff Cannot Invoke a Regulation to Evade a Statutory Command

The essence of Plaintiffs' argument is that, because the Department allegedly did not seek clarification of its request under 28 C.F.R. § 16.3(b), the Court cannot dismiss the complaint even if Plaintiffs have not actually satisfied the essential elements of their claim. This misconstrues the relationship between statutes and regulations. FOIA provides that a request triggers an agency's search and disclosure obligations only if the request "reasonably describes [the] records" it seeks. 5 U.S.C. § 552(a)(3)(A). The requirement that a request must reasonably describe the records that it seeks thus is a statutory element of a FOIA claim. *See Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020) ("an agency is only obligated to release nonexempt records if it receives a request that 'reasonably describes such records'"); *Voinche v. FBI*, 412 F. Supp. 2d 60, 66 (D.D.C. 2006) (characterizing this rule as one of FOIA's "statutory requirements").

Federal Rule of Civil Procedure ("Rule") 12(b)(6), meanwhile, directs a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 29 (2014) ("like any other element of a cause of action, it must be adequately alleged at the pleading stage in order for the case to proceed"); *Taylor v. FDIC*, 132 F.3d 753, 761 (D.C. Cir. 1997) (dismissal warranted if

2

plaintiff "failed to allege all the material elements of [its] cause of action"). Rule 12(b)(6), like all Federal Rules, has the full force of statute. *See* 28 U.S.C. § 2072(b); *Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006); *United States v. Microsoft Corp.*, 165 F.3d 952, 958 (D.C. Cir. 1999).

Plaintiffs argue that because Defendants allegedly did not follow procedure laid out in a regulation, this Court cannot enforce 5 U.S.C. § 552(a)(3)(A) and Rule 12(b)(6). But it is axiomatic that a plaintiff may not rely on a regulation to evade a statutory requirement. *See Envt'l Def. Fund v. EPA*, 922 F.3d 446, 457 (D.C. Cir. 2019) ("A regulation can never trump the plain meaning of a statute." (cleaned up)); *Pub. Serv. Elec. & Gas Co. v. FERC*, 989 F.3d 10, 19 (D.C. Cir. 2021) (citing this principle to reject plaintiff's effort to exploit purported "tension" between a regulation and statute); *see also Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress."); *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986) ("an agency literally has no power to act . . . unless and until Congress confers power upon it"); *Cent. United Life Ins. Co. v. Burwell*, 827 F.3d 70, 73 (D.C. Cir. 2016) ("Agencies may act only when and how Congress lets them"); *Dearth v. Lynch*, 791 F.3d 32, 44 n.7 (D.C. Cir. 2015) (a regulation plainly cannot bar what the statute allows for" (cleaned up)); *Nat. Res. Def. Council v. EPA*, 859 F.2d 156, 169 (D.C. Cir. 1988) (regulation "must be fully consistent with" statute); *Nat'l Wildlife Fed'n v. ICC*, 850 F.2d 694, 699 (D.C. Cir. 1988) ("If Congress's intent is clear, then any inconsistent regulation must be set aside"). Plaintiffs' reliance on a regulation to excuse their failure to establish the elements of their claim thus fails.

**B.  28 C.F.R. §16.3(b) Does Not Require a Court to Maintain a FOIA Suit Even When Plaintiffs Have Not Reasonably Described the Records Sought**

Even on its own terms, moreover, § 16.3(b) does not require courts to maintain a FOIA suit even if a plaintiff has failed to reasonably describe the records sought. By its plain language, the

regulation does not purport to create any rights for requesters. It is phrased only as a directive to agencies, not a grant of rights to requesters, telling agencies simply to "inform the requester what additional information is needed or why the request is otherwise insufficient." 28 C.F.R. § 16.3(b); *cf. Alexander v. Sandoval*, 532 U.S. 275, 288 (2001) (law contained no "rights-creating language," but rather was "phrased as a directive to federal agencies" (cleaned up)). Section 16.3(b) does not grant a requester a right to modify or reformulate a defective request, nor does it require an agency to conduct a search in response to a modified or reformulated request.

To the contrary, § 16.3(b) requires an agency to tell the requester either what additional information it needs to conduct a search "or why the request is otherwise insufficient." 28 C.F.R. § 16.3(b). This disjunctive phrasing makes clear that an agency need not let a requester modify or reformulate a request. An agency need only inform the requester why the request was deficient— information that the requester can then use to file a new, adequate request. *See Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1141 (2018) (term "'or' is almost always disjunctive" (internal quotation marks omitted)); *United States v. Woods*, 571 U.S. 31, 45 (2013) (if a term is disjunctive, "the words it connects are to be given separate meanings" (internal quotation marks omitted)); *Public Citizen v. Rubber Mfrs. Ass'n*, 533 F.3d 810, 814 (D.C. Cir. 2008) (an agency "need only satisfy one of these disjunctive conditions to qualify"); *Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 741 (D.C. Cir. 1983) (if a statute is "phrased in the disjunctive," then it is "sufficient if either prong of the proviso is satisfied" (internal quotation marks omitted)). Thus, nothing in the regulation required Defendants to give Plaintiffs a chance to modify or reformulate their request.[1]

---

[1]     Any error Defendants might have committed in not informing Plaintiffs at the agency level why their request is insufficient would be harmless. *See Afshar v. Dep't of State*, 702 F.2d 1125, 1135 (D.C. Cir. 1983) (agency error subject to harmless error analysis under FOIA); *Lykins v. Dep't of Just.*, 725 F.2d 1455, 1466 (D.C. Cir. 1984) (Edwards, J., concurring in part and dissenting in part) (agency action was "at worst harmless error" under FOIA); *Whalen v. Marine Corps*, 407

Even if § 16.3(b) required Defendants to provide Plaintiffs an opportunity to modify or reformulate their deficient request, moreover, the regulation does not say that if an agency does not do so, then a court cannot dismiss a FOIA claim based on that request for failure to reasonably describe the records sought. *See* 28 C.F.R. § 16.3(b). Such a rule cannot be read into the regulation. *See, e.g.*, *Dean v. United States*, 556 U.S. 568, 572 (2009) ("we ordinarily resist reading words or elements into a statute that do not appear on its face"); *Phillips v. Comm'r*, 851 F.2d 1492, 1498 (D.C. Cir. 1988) ("Even if the problem is real, it is not sufficient basis for this court to read into a statute provisions that are not there"); *Ruderman v. Flemming*, 261 F.2d 373, 374 (D.C. Cir. 1958) ("we can not make the regulations say what they do not say"); *Shelton v. United States*, 165 F.2d 241, 247 (D.C. Cir. 1947) ("It is not incumbent upon the courts to write regulations.").

Indeed, another provision of Defendants' FOIA regulations makes clear that a requester cannot rely on 28 C.F.R. § 16.3(b) to maintain a FOIA suit despite its failure to reasonably describe the records sought. Section 16.11 of the regulations provides: "Nothing in this subpart shall be construed to entitle any person, as of right, to any service or to the disclosure of any record to which such person is not entitled under the FOIA." 28 C.F.R. § 16.11. As explained, FOIA requires an agency to search for and produce records only if a request "reasonably describes such records." 5 U.S.C. § 552(a)(3)(A). A requester thus is not entitled to any records at all if it fails to reasonably describe the records it seeks. If an otherwise-meritorious FOIA suit would merit dismissal because

---

F. Supp. 2d 54, 61 n.6 (D.D.C. 2005) (agency error was harmless under FOIA); *cf. RadNet Mgmt v. NLRB*, 992 F.3d 1114, 1124 (D.C. Cir. 2021) ("In administrative law, as in federal civil and criminal litigation, there is a harmless error rule" (cleaned up)); Fed. R. Civ. P. 61 ("the court must disregard all errors and defects that do not affect any party's substantial rights."). This is so for two reasons. First, had Defendants informed Plaintiffs why their request was insufficient at the agency level, Defendants would not have been obliged to let Plaintiffs modify or reformulate their request, as explained above. *See* 28 C.F.R. § 16.3(b). Second, through their motion and this reply, Defendants have now informed Plaintiffs exactly why their request was insufficient—information that Plaintiffs can use to file a new request that reasonably describes the records sought.

the request failed to reasonably describe the records sought, then allowing a requester to maintain that suit by relying on § 16.3(b) would entitle the requester to disclosure of records to which it "is not entitled under the FOIA"—just what 28 C.F.R. § 16.11 prohibits. Plaintiffs cannot invoke § 16.3(b) while simultaneously asking this Court to disregard § 16.11. *See Am. Fed'n of Gov't Emps. v. Fed. Lab. Relations Auth.*, 803 F.2d 737, 740 (D.C. Cir. 1986) ("It is a generally accepted precept of interpretation that . . . regulations are to be read as a whole, with each part or section construed in connection with every other part or section" (cleaned up)).

Plaintiffs' argument seems to be that to avoid rendering § 16.3(b) judicially unenforceable, if an agency did not offer a chance to modify or reformulate a request at the agency level, then courts must let requesters maintain suits based on defective requests that otherwise merit dismissal. This argument fails for three reasons. First, as explained, § 16.11 prevents requesters from relying on § 16.3(b) to obtain records to which FOIA does not otherwise entitle them.

Second, FOIA does not enable Plaintiffs to invoke § 16.3(b), given that FOIA "does not . . . provide a cause of action for challenging agency actions." *Newport Aeronautical Sales v. Dep't of Air Force*, Civ. A. No. 04-1283, 2007 WL 2007966, at *4 (D.D.C. July 11, 2007). Rather, relief under FOIA is limited to enjoining an agency "from withholding agency records" and directing it to produce "records improperly withheld." 5 U.S.C. § 552(a)(4)(B); *see also Jud. Watch, Inc. v. Air Force*, Civ. A. No. 11-0932, 2012 WL 1190297, at *1 (D.D.C. Apr. 10, 2012) ("Under FOIA, a suit is authorized against federal agencies only to remedy an agency's improper withholding of information"). Plaintiffs cannot shoehorn a claim invoking § 16.3(b) into FOIA.

Third, even if this Court can tell Defendants to confer with Plaintiffs over the scope of their requests, it does not follow that the Court must deny Defendants' motion to dismiss and allow Plaintiffs' defective complaint to survive. Plaintiffs can submit a legally sufficient request in the

future, and the agency can confer at that time on any questions. *See Latham v. Dep't of Just.*, 658 F. Supp. 2d 155, 161 (D.D.C. 2009) (granting agency summary judgment because a request failed to reasonably describe the records sought, while simultaneously emphasizing agency's "obligation to afford [the requester] an opportunity to discuss and to modify his request" under § 16.3(b)).

Finally, even if a requester can defeat a Rule 12(b)(6) motion based on an agency's failure to inform it why its request was deficient, Plaintiffs plead no facts to support a plausible inference that Defendants did not do so. While Plaintiffs affix various declarations to their memorandum to support this assertion, a plaintiff cannot rely on materials external to their complaint in responding to a Rule 12(b)(6) motion. Rather, this Court's inquiry is limited to the well-pleaded allegations within the four corners of the complaint. *See United States ex rel. Shea v. Cellco P'ship*, 863 F.3d 923, 936 (D.C. Cir. 2017) (court cannot consider "facts beyond the complaint in connection with a motion to dismiss the complaint for failure to state a claim"); *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994) ("factual allegations in briefs or memoranda of law . . . may never be considered when deciding a 12(b)(6) motion"); *Brown v. Corr. Corp. of Am.*, 603 F. Supp. 2d 73, 80 (D.D.C. 2009) (explaining that "a factual issue is plainly inappropriate to resolve on a motion to dismiss pursuant to Rule 12(b)(6)"). Simply put, Plaintiffs are asking this Court to make a factual finding based on materials beyond their complaint. That is improper at the Rule 12(b)(6) stage. Should the Court dismiss Plaintiffs' complaint and grant them leave to amend their complaint, Plaintiffs may choose to plead that Defendants did not inform them, at the agency level, of their request's deficiencies. But Plaintiffs pleaded no such allegations in their complaint, and can neither rely on materials outside their complaint to support that allegation, nor "amend [their] complaint in opposition to a motion to dismiss." *Savignac v. Day*, 539 F. Supp. 3d 107, 118 (D.D.C. 2021).

### C.      The Cases Plaintiffs Cite Do Not Compel a Different Result

Plaintiffs' reliance on cases involving § 16.3(b) (or similar regulations) is misplaced, as none of these cases addressed any of the arguments presented here. Each of these cases assumed that because the regulation directs an agency to explain why a request is defective and/or confer with a requester, failure to do so precludes dismissal. *See* Resp. at 7-11, ECF No. 21 (citing cases).

But as explained, that simply does not follow. None of these cases considered that plaintiffs cannot rely on a mere regulation to evade a statutory requirement—here, FOIA's command that a request only triggers an agency's duty to respond if it "reasonably describes [the] records" that it seeks, 5 U.S.C. § 552(a)(3)(A), and Rule 12(b)(6)'s command that a complaint's "failure to state a claim upon which can be granted" requires dismissal, Fed. R. Civ. P. 12(b)(6). Nor did these cases recognize that § 16.3(b) does not, in fact, require an agency to allow a requester to modify or reformulate a defective request; § 16.11's command that a requester cannot invoke § 16.3(b) to obtain records to which it is not otherwise entitled; that any error to follow § 16.3(b) would have been harmless; that even if § 16.3(b) requires an agency to provide an opportunity to modify or reformulate a defective request, it does not provide that the remedy for failing to do so is denial of a Rule 12(b)(6) motion; that requesters cannot seek to enforce § 16.3(b) through FOIA, which does not provide for such relief; and that at a minimum, a requester must plead the fact that the agency did not comply with § 16.3(b) in its complaint, rather than rely on materials outside the complaint.

In short, the cases Plaintiffs cite do not actually address any of the arguments Defendants make. That likely is because the agencies there did not raise these arguments. Be that as it may, "it is black-letter law that cases are not precedent for issues that were not raised or decided." *PHH Corp. v. CFPB*, 881 F.3d 75, 195 (D.C. Cir. 2018) (Kavanaugh, J., dissenting), *abrogated by Seila L. LLC v. CFPB*, 140 S. Ct. 2183 (2020); *see also Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled

upon, are not to be considered as having been so decided as to constitute precedents."); *UC Health v. NLRB*, 803 F.3d 669, 682 (D.C. Cir. 2015) ("if an issue is not argued, or though argued is ignored by the court, or is reserved, the decision does not constitute a precedent to be followed with respect to that issue" (cleaned up)). The cases that Plaintiffs cite thus do not support a different result.

*       *       *

For these reasons, Plaintiffs cannot rely on § 16.3(b) to maintain this suit despite failing to meet the essential element of their claim that their request reasonably describe the records sought.

## II.    Plaintiffs Failed to Reasonably Describe the Records Sought

As Defendants explained in moving to dismiss, Plaintiffs failed to reasonably describe the records sought by requesting various categories of records "related to," "concerning," and/or "in connection with" certain topics. In *American Center for Law & Justice v. Department of Homeland Security*, 573 F. Supp. 3d 78, 85 (D.D.C. 2021), the court explained that "[a] request for documents that merely 'reference' certain topics might not be unreasonable," because "responsive documents could probably be found with a simple keyword search across agency databases." But a request for all records that "relate to" a given topic, or that uses similarly "expansive" and indeterminate language, "would sweep in any [record] even remotely related to" that topic. *Id.* (internal quotation marks omitted). Indeed, "a record need not even discuss [a topic] to still relate" to the topic. *Id.* Such "broad descriptions . . . leave the unfortunate FOIA processor assigned to such a case in a hopeless muddle without clear guidance about what documents are being sought." *Id.* The indeterminacy is greater when, as here, a request seeks records relating to not one topic, but seven.

Examples that illustrate the issue abound.[2] Consider Plaintiffs' request for all "[d]ocuments and information related to any weapons used by or in the Suspect's possession and recovered in

---

[2]     In *American Center*, 573 F. Supp. 3d at 85, the court provided these examples to illustrate a request's flaws: "An email between Border Patrol agents about a migrant who might have

connection with the Incident." Request ¶ 1, ECF No. 1-1. Such expansive phrasing can encompass any record of any sort (including emails and text messages) anywhere in either agency discussing in any way the particular type(s) of weapon(s) the suspect used, including records from unrelated incidents involving the same type(s) of weapon(s), relating to any specific incident—not just records involving specific weapon(s) the suspect actually used. If either agency has ever issued, or even considered issuing, a rule relating to such type(s) of weapon(s), the request may well reach all records involved in such rulemaking(s) (or contemplated rulemaking(s)). The same issues also plagues Plaintiffs' request for all records "related to any ammunition" or "other equipment used by or in the Suspect's possession and recovered in connection with the Incident." Request ¶¶ 2-3. A reasonable FOIA processor cannot possibly know "precisely what records are being requested," as FOIA requires. *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982). To the contrary, answering such questions inevitably requires difficult and inherently subjective judgment calls—precisely the opposite of what a reasonably-described request requires. *See Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 389 (D.C. Cir. 1996) ("The agency is not required to speculate about potential leads.").

Or consider Plaintiffs' requests for all records "concerning the Incident and the Suspect collected from or provided by the [AVA] Van Ness." Request ¶ 3. Given the broad, indeterminate scope of the term "concerning," it is unclear whether this request would include, for example, the building's schematics, and/or all or any other records relating to the apartment, building, building

---

COVID-19 (but also might not) could qualify as a record pertaining to 'the number of migrants with COVID.' And one might think a briefing to Border Patrol agents on COVID-19 avoidance to 'regard or reference' the number of migrants with COVID, given how many migrants the agents encounter every day. Or consider a message between [the agencies] about a sex offender who entered the country illegally. [Plaintiff] would have a viable argument that, depending on when the letter was sent, it could 'regard' in some way the cancellation of Operation Talon, which might have otherwise snagged that criminal. Finally, as the Government points out, a record need not even discuss a detention at the border to still relate 'in any way' to 'the arrest or detention of any person at the U.S. Border who is on any government terror-related or no-fly watch list.'"

owner, other building residents, Van Ness neighborhood, weapon(s) and/or equipment the shooter used, other items found in the apartment, victims, and/or Edmund Burke School. None of these records necessarily "concern" the incident or suspect specifically—but whether or not one would say that any/all such records "concern" the incident or suspect at all is a matter of semantics, opinion, and judgment. A reasonable FOIA processor thus cannot know "precisely" what records Plaintiffs seek, *Yeager*, 678 F.2d at 326, and could only "speculate," *Kowalczyk*, 73 F.3d at 389.

Next, consider Plaintiffs' request for "[a]ll documents and information collected, received, and/or provided by any other law enforcement agency to the ATF in connection with the ATF's investigation into the Incident and the Suspect." Request ¶ 5. The phrase "in connection with" is sufficiently indeterminate that this request too may or may not sweep up all records that any law enforcement agency ever gave ATF relating to the suspect, shooter's modus operandi, victims, type(s) of weapon(s) used, building, building owner, other residents, neighborhood, or Edmund Burke School. It can also reach emails and/or text messages between employees of ATF and other law enforcement agencies even loosely relating to any of the above topics sent at any point in time. A reasonable FOIA processor would not know precisely which records are responsive, and could only speculate as to what Plaintiffs mean. *See Kowalczyk*, 73 F.3d at 389; *Yeager*, 678 F.2d at 326.

Then there is Plaintiffs' request for "[a]ll video and body cam footage obtained in connection with the investigation into the Incident and/or filmed by any law enforcement agency during the Incident." Request ¶ 6. Given the breadth and malleability of the phrase "in connection with the investigation into the Incident," this request could encompass video and/or body camera footage involving different incidents that are "connected" to the shooting at issue because they involved the same or similar type(s) of weapon(s), shooter's modus operandi, neighborhood, and/or location. And the phrase "filmed by any law enforcement agency during the Incident" is

not at all limited to the incident at issue—it reaches all footage about anything, anywhere in the world, from any law enforcement agency, filmed during the period during which the incident occurred. Again, a reasonable FOIA processor could not know "precisely" which records Plaintiffs seek, and would be left to speculate. *See Kowalczyk*, 73 F.3d at 389; *Yeager*, 678 F.2d at 326.

Finally, consider Plaintiffs' request for "[a]ll reports and summaries generated by ATF or generated by other law enforcement agencies and subsequently provided to or shared with ATF in connection with the investigation into the Incident or the Suspect." Request ¶ 7. Just how strong a "connection," *id.*, between this investigation and a given report or summary must be is unclear—do Plaintiffs seek any report or summary that specifically discusses and/or analyzes the incident? Any report or summary that merely mentions the incident, even only in passing? What about any report or summary that merely contains a statistical analysis based on a dataset that includes any data at all relating to the incident? That is an inherently subjective, indeterminate judgment call.

Further, ATF generates reports and summaries of all different kinds, including those that concern specific incidents and broader aggregate statistical analyses. *See Data & Statistics*, ATF, https://www.atf.gov/resource-center/data-statistics. Simply ascertaining which of these reports and summaries include, in some way or another, information relating to the incident would be a sizable undertaking, requiring Defendants to conduct a significant amount of "research"—something that FOIA does not require. *Harrison v. Bureau of Prisons*, 681 F. Supp. 2d 76, 9 (D.D.C. 2010); *see also Rios v. United States*, 275 F. Supp. 3d 88, 92 (D.D.C. 2017); *Dugan v. Dep't of Just.*, 82 F. Supp. 3d 485, 492 (D.D.C. 2015); *Hall & Assocs. v. EPA*, 83 F. Supp. 3d 92, 102 (D.D.C. 2015).

Finally, once ATF has ascertained how strong the connection to the investigation must be for a report or summary to fall within the request's scope and identified all reports and summaries that contain information relating to the investigation, it must then apply that standard to those

12

records to determine which records in fact fall within the request's scope. And all these challenges increase exponentially as to reports and summaries that are "generated by other law enforcement agencies" and then shared with ATF—records with which ATF naturally will be far less familiar. Request ¶ 7. Once again, a reasonable FOIA processor could not know precisely which records Plaintiffs seek, and could only speculate. *See Kowalczyk*, 73 F.3d at 389; *Yeager*, 678 F.2d at 326.

   None of this is to say that these questions are impossible to answer. For each category of records that Plaintiffs request, a FOIA processor could certainly hazard a guess as to which records Plaintiffs are or are not seeking. But FOIA does not require a processor to do so, and requires more of Plaintiffs than that. It requires a request to specify "precisely what records are being requested," *Yeager*, 678 F.2d at 326, so that a processor need not "speculate about" what records the requester is seeking, *Kowalczyk*, 73 F.3d at 389. Plaintiffs do not come even close to meeting this standard.

   Plaintiffs insist that they did, in fact, reasonably describe the records sought, and cite cases they contend support their position. But their arguments do not withstand scrutiny, and the cases they cite do not show that the Plaintiffs here reasonably describe the records they seek.

### A.    Plaintiffs' Arguments as to Why Their Request is Sufficient Are Unpersuasive

   The thrust of Plaintiffs' argument is that a reasonable FOIA processor could easily identify some records that are responsive to its request. Resp. at 12 ("Defendants make no effort to explain why an ATF employee could not locate records about the Shooting in response to the Request."). This argument misses the point. Of course a processor might identify *some* responsive records. The problem with Plaintiffs' request is not that it is impossible to identify any responsive records at all, but the large size of the zone of indeterminacy that the request creates. Nearly any request will enable a processor to identify at least one or two pieces of low-hanging fruit. Were that enough to reasonably describe the records sought, this requirement would be drained of all substance.

Plaintiffs voice skepticism that Defendants could possibly fail to locate "all video and body cam footage obtained in connection with the investigation into the Shooting and/or filmed by any law enforcement agency during the Shooting or all reports and summaries generated by ATF or generated by other law enforcement agencies and subsequently provided to or shared with ATF in connection with the investigation into the Shooting or Raymond Spencer." Resp. at 12 (cleaned up). But Plaintiffs have not explained how this is so. *See supra* at 11-13. A reasonable FOIA processor no doubt could locate some records that fall within these categories, but, as explained, that is not enough—these categories are too broad and indeterminate to indicate precisely which records they contain, even if some number of responsive records could be found.

The most that Plaintiffs show is that they perhaps could have filed a request that reasonably described the records sought. But that does not mean the request they actually filed is sufficient. And the request they filed is what matters on a Rule 12(b)(6) motion, not the request that they wish they instead had filed, or the request as they would attempt to reconstruct it through their response to a motion to dismiss. *See Nat'l Sec. Counselors v. CIA*, 969 F.3d 406, 410 (D.C. Cir. 2020) ("agencies should read FOIA requests as drafted, not as either agency officials or the requester might wish it was drafted" (cleaned up)); *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984) ("The agency was bound to read it as drafted, not as either [the parties] might wish it was drafted.").

Plaintiffs' attempts to distinguish the sizable body of cases in this District recognizing that requests seeking all records "relating to" a topic, or using similarly indeterminate language, fail to reasonably describe the records sought, *see* Mot. at 5-6 (citing cases), are unpersuasive. Plaintiffs note that in none of the cases Defendants cited was the request's use of the term "relating to," or similarly indeterminate terms, the request's only defect. Resp. at 14. But in each case Defendants cited, the court criticized the request's use of such language in a manner indicating that this defect

alone may well suffice to render a request deficient—even if additional defects also happened to plague the specific request at issue. *See id.* Even if those requests suffered additional defects, that hardly makes Plaintiffs' request proper. After all, "[d]ecisions from a district court do not create a floor for what a FOIA request must do to pass muster. To say that [a] request is narrower than in another case does not answer whether [the] request here meets FOIA's requirements." *Am. Ctr.*, 573 F. Supp. 3d at 87.[3] Plaintiffs also note that in several cases, the agency told the requester why its request was deficient, and offered an opportunity to modify or reformulate the request. But that is of no moment, as § 16.3(b) neither requires agencies to do the same nor precludes courts from dismissing complaints based on defective requests when an agency does not do so. *See supra* § I.

And tellingly, while Plaintiffs address several cases Defendants cited, they conspicuously decline to address *American Center*, 573 F. Supp. 3d at 85, which explained that a request for all records that "relate to" a given topic, or that uses similarly "expansive" terms, "would sweep in any [record] even remotely related to" that topic. Equally striking is their failure to acknowledge *Mason v. Callaway*, 554 F.2d 129, 131 (4th Cir. 1977), which explained that terms such as "concerning," "pertaining to," and "relating to," among others, "typif[y] the lack of specificity that Congress sought to preclude in the requirement . . . that records sought be reasonably described." Nor do Plaintiffs acknowledge the numerous decisions from this District that have endorsed *Mason*'s reasoning. *See Bloeser v. Dep't of Just.*, 811 F. Supp. 2d 316, 321 (D.D.C. 2011); *McKinley v. FDIC*, 807 F. Supp. 2d 1, 7 (D.D.C. 2011); *Latham*, 658 F. Supp. 2d at 161; *Dale v. IRS*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002).

---

[3]     Notably, the court in *American Center*, 573 F. Supp. 3d at 87, said this in response to a requester emphasizing that its request was narrower than the request at issue in *Freedom Watch v. Department of State*, 925 F. Supp. 2d 55 (D.D.C. 2013)—the very same case Plaintiffs emphasize in arguing that their request is not as indeterminate as others found to be defective, Resp. at 14-15.

Finally, Plaintiffs stress an agency's duty to construe a request liberally. But FOIA imposes a duty on a requester, as well—to make clear "precisely" which records it seeks, *Yeager*, 678 F.2d at 326, so that an agency need not "speculate" about what it seeks, *Kowalczyk*, 73 F.3d at 389. An agency's duty to construe a request liberally does not excuse a requester from satisfying its own duty to reasonably describe the records that it seeks. *See Nation Magazine v. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (while an agency must "construe a FOIA request liberally," a requester also "must reasonably describe the records sought" (cleaned up)); *Manna v. Dep't of Just.*, 106 F. Supp. 3d 16, 19 (D.D.C., 2015) ("Although an agency has a duty to construe a FOIA request liberally, a FOIA request must reasonably describe the records requested" (cleaned up)).

### B. The Cases Plaintiffs Cite to Defend Their Request's Adequacy Are Inapposite

Plaintiffs rely on a trio of cases from this District—*Gun Owners of America, Inc. v. FBI*, 594 F. Supp. 3d 37, 47 (D.D.C. 2022), *Charles v. United States*, Civ. A. No. 21-1983 (BAH), 2022 WL 951242, at *4 n.7 (D.D.C. Mar. 30, 2022), and *National Security Counselors v. CIA*, 898 F. Supp. 2d 233, 277 (D.D.C. 2012), *aff'd*, 969 F.3d 406 (D.C. Cir. 2020)—for the notion that its request reasonably describes the records sought notwithstanding expansive and indeterminate phrasing. As explained below, none of these decisions in fact supports Plaintiffs' position.

In *Gun Owners*, 594 F. Supp. 3d at 47, the court rejected the idea that FOIA prohibits requests using the phrase "relating to," or similarly indeterminate terms, concluding that "[t]hat is not the law." *Gun Owners* reasoned that "[w]hether a particular FOIA request reasonably describes the records sought is a highly context-specific inquiry," one that does not lend itself to "a bright-line rule." *Id.* Respectfully, Defendants disagree. As many other judges in this District recognize, terms such as "relating to" are inherently indeterminate because they necessarily "sweep in any [record] even remotely related to" the topic at issue, even records that do "not even discuss" the topic. *Am. Ctr.*, 573 F. Supp. 3d at 85. Judge Cooper expressed this sentiment in *Shapiro v. CIA*,

16

170 F. Supp. 3d 147, 154 (D.D.C. 2016) (internal quotation marks omitted), explaining that "[b]ecause a record may pertain to something without specifically mentioning it," such phrasing leaves "the agency to guess at the plaintiff's intent." So too has Judge Sullivan, who explained that "because a record may pertain to something without specifically mentioning it . . . the lack of clarity leaves the agency to guess at the plaintiff's intent." *Sack v. CIA*, 53 F. Supp. 3d 154, 164 (D.D.C. 2014). Or, as Judge Collyer aptly put it, "life, like law, is a seamless web, and all documents 'relate' to all others in some remote fashion." *Freedom Watch, Inc.*, 925 F. Supp. 2d at 61 (cleaned up). A request phrased in such terms "typifies the lack of specificity that Congress sought to preclude in the requirement . . . that records sought be reasonably described." *Mason*, 554 F.2d at 131. Terms such as "relating to" thus inherently render a request indeterminate, no matter what context surrounds them.

*Gun Owners*, 594 F. Supp. 3d at 47, also reasoned that to hold that terms like "related to" categorically render a request indeterminate would cause many requests to be deemed invalid. The problem with this consequence-driven argument is that it reasons backward from the result to be avoided, rather than forward from FOIA's text. *See Rutledge v. Pharm. Care Mgmt.*, 141 S. Ct. 474, 483 (2020) ("When construing a statutory provision, we begin with the text."). The fact that holding FOIA requesters to their burden to reasonably describe the records sought may well result in more FOIA cases being dismissed is no reason not to do so. Indeed, the Supreme Court recently rejected the notion that FOIA must be construed with a thumb on the scale for disclosure, holding that courts must give FOIA not a broad or narrow reading, but only "a fair reading." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019). There, the Court explained that FOIA's "exemptions are as much a part of [its] purposes and policies as the statute's disclosure

requirement." *Id.* (cleaned up). The same is true of FOIA's requirement that a request warrants a response only if it "reasonably describes" the records sought. 5 U.S.C. § 552(a)(3)(A).

In any event, the consequences of adopting a rule against requests that use terms such as "relating to" would be far less dramatic than the court in *Gun Owners* feared. If an agency denies a request on this basis, the requester can simply submit a new request that more clearly describes the records it seeks. Indeed, Plaintiffs' can do just that if this Court dismisses their complaint—or even without waiting for that. And over time, as requesters become familiar with the rule, they will be less likely to phrase their requests in this way. A rule against requests phrased in terms such as "relating to" thus would not conflict with "FOIA's general philosophy of full agency disclosure" in any meaningful way. *Gun Owners*, 594 F. Supp. 3d at 47 (internal quotation marks omitted).

Moreover, if it is appropriate to consider the consequences that a rule against requests that use terms such as "relating to" would have, it is appropriate to consider all of the consequences—including the positive ones. "Court dockets in this district overflow with [FOIA] matters." *Am. Ctr.*, 573 F. Supp. 3d at 79. In 2021, such cases "represent[ed] almost a quarter of the district's entire civil docket." *Id.* at 83. FOIA cases often "take years to resolve." *Id.*; *McGehee v. Dep't of Just.*, 362 F. Supp. 3d 14, 16 (D.D.C. 2019) ("In 1998, the Indianapolis Colts drafted Peyton Manning, Britney Spears released her hit single 'Baby One More Time,' and Fielding McGehee submitted a [FOIA] request to the FBI. While the heydays of Mr. Manning and Ms. Spears have come and gone, Mr. McGehee's FOIA request lingers."). And FOIA "require[s] massive efforts from defendant agencies." *Id.* at 79. The salutary effects of a rule against requests that use terms such as "relating to" on the Court's docket and agency resources merit at least as much weight in the calculus of consequences as the minor inconvenience such a rule would create for requesters.

Finally, *Gun Owners*, 594 F. Supp. 3d at 48 recognized that "many—perhaps even most—requests framed" using the terms "related to" or similarly indeterminate language "will fail to reasonably describe the records sought." Whether or not this Court were to conclude that all requests phrased in such terms fail to reasonably describe the records sought—a broad issue that this Court need not reach in this case, which concerns only Plaintiffs' request—the request here at issue fails to reasonably describe the records sought, as detailed *supra* at 10-13.

*National Security Counselors*, 898 F. Supp. 2d at 277, meanwhile, is even less persuasive. The court there noted that a rule against requests using the term "relating to" or similar phrasing "would result in a large swath of FOIA requests never even getting processed." *Id.* But as explained above, that is immaterial—and even if it did matter, the positive consequences of any such rule on this Court's docket and agency resources merit at least as much weight as the negative ones. And the *National Security Counselors* court recognized, as did the *Gun Owners* court, the likelihood "that many, perhaps most, requests that use the phrases 'relating to,' 'pertaining to,' and the like do not reasonably describe the records sought." *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 277.

*Charles* is less persuasive still. There, the court noted that a request phrased using the term "related to" was "substantially more specific than those at issue in the cases" where requests were held to be deficient. *Charles*, 2022 WL 951242, at *4 n.7. But that is immaterial—as the court in *American Center,* 573 F. Supp. 3d at 87, explained, "[d]ecisions from a district court do not create a floor for what a FOIA request must do to pass muster. To say that [a] request is narrower than in another case does not answer whether [the] request here meets FOIA's requirements."

Thus, no case Plaintiffs cite shows that their request is adequate.[4]

---

[4]     Puzzlingly, Plaintiffs also cite several cases that did not address the issue at all. *See Nicholls v. Off. of Personnel Mgmt.*, 863 F. Supp. 2d 4, 10-11 (D.D.C. 2012); *Sack*, 53 F. Supp. 3d at 162.

## CONCLUSION

This Court should dismiss Plaintiffs' complaint with prejudice.[5]

Dated: January 24, 2023

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: /s/
BRADLEY G. SILVERMAN, D.C. Bar No. 1531664
Assistant United States Attorney
601 D Street NW
Washington, DC 20530
(202) 252-2575

*Attorneys for the United States of America*

---

[5]     In their response, Plaintiffs characterize discussions between counsel. Such discussions are necessarily irrelevant to the legal issues in this case, and are inadmissible under Federal Rule of Evidence 408(a). To ensure that the Court has a full, undistorted picture, however, undersigned proffers the following. Shortly after undersigned appeared in this case, Plaintiffs' counsel proposed a compromise where Defendants would produce only certain records, and Plaintiffs would then dismiss this case. Undersigned expressed sympathy for the tragedy that Plaintiffs experienced, and told Plaintiffs' counsel that he would convey Plaintiffs' proposal to Defendants. In late December 2022, as Defendants' responsive pleading deadline drew near, undersigned told Plaintiffs' counsel that Defendants were still weighing Plaintiffs' proposal, but needed more time to consider it—especially as relevant decision-makers were on holiday leave. He sought consent for a 30-day extension. *See Jordan v. Dep't of Lab.*, 273 F. Supp. 3d 214, 244 (D.D.C. 2017) ("Thirty-day extensions at the beginning of FOIA cases are common."). Plaintiffs' counsel surprisingly opposed an extension, even after undersigned clarified that its purpose was solely to let Defendants continue weighing Plaintiffs' own compromise offer. When Plaintiffs' counsel then reaffirmed Plaintiffs' opposition, Defendants moved to dismiss, pointing out the legal infirmity that afflicted Plaintiffs' request as submitted. Of course, had the parties' talks not been aborted by Plaintiffs, it is possible that a reframed, agreed request might have been clearer and thus have been able to be processed. One day after the dismissal motion was filed, Plaintiffs' counsel asked undersigned to resume compromise discussions, which Defendants declined. Plaintiffs' claim that undersigned sought an apology is misleading at best. Undersigned voiced surprise that Plaintiffs' counsel had opposed an extension that would have let Defendants weigh Plaintiffs' compromise offer, and then, without even an apology for their conduct that had ended the parties' ability productively to engage in discussions, sought to resume compromise negotiations after Defendants already had moved to dismiss. Defendants' counsel did not ask for an apology. Plaintiffs' counsel proactively offered to apologize on the condition that Defendants produce certain records, which Defendants declined.